## CARLSON v. SIOUX FALLS WATER CO.

The master is not liable for an injury sustained by his servant in the
course of his employment, when the danger is of such a character that
it must be as apparent to the servant as to the master, or when it is
such that it could not be ascertained by either in the exercise of rea-
sonable care and prudence.

(Syllabus by the court. Opinion filed May 28, 1894.)

Appeal from circuit court, Minnehaha county. Hon.
FRANK R. AIKENS, Judge.

Action to recover damages for personal injuries. Judg-
ment for plaintiff, and defendant appeals. Reversed.

The facts are fully stated in the opinion.

*D. R. Bailey* and *Davis, Lyon & Gates*, for appellant.

Upon the proposition on which the court decided the case,
counsel for appellant cited: Songstad v. Ry. Co., 5 Dak. 517;
Simmons v. C., etc., Ry. Co., 110 Ill. 340; S. C. 18 A. & Eng. R.
Cas. 50; Jacksonville, Tampa & Key West Ry. Co. v. Peninsu-
lar Land & Mfg. Co., 17 L. R. A. 33; Knight v. Cooper (W. Va)
14 S. E. 999; Perigo v. Ry. Co., 52 Ia. 276; Naylor v. Ry. Co.,
53 Wis. 661; Rasmussen v. Ry. Co., 65 Ia. 236; Walsh v. St.
Peter & D. Co., 27 Minn. 367; Roth v. N. P. L. Co., 18 Or. 205;
Wharton on Negligence § 214; Ry. Co. v. Lempe, (Tex ) 11 Am.
& Eng. R. Cas. 201; Money v. Lower Vein Coal Co,, 55 Ia. 671;

Ry. Co. v. Britz, 72 Ill. 261; Toomey v. Eureka R. & S. Works, (Mich.) 50 N. W. 850, Olson v. McMullen, 34 Minn. 94.

*Palmer & Rogde,* for respondent.

While we do not deny the doctrine of the general rule that a servant who accepts a service assumes the risks incidental thereto, still the exceptions to that rule are even more well defined and clearly established by judicial decisions than is the rule itself. If the risk had been but slight, and such as a careful and prudent man would risk, if he is injured thereby, although he remains in the employment after the discovery of the defect, it is not such negligence as prevents a recovery for such injury. Green v. Ry. Co., 31 Minn. 248; Kroy v. Chicago Ry. Co., 32 Iowa. 357; Conroy v. Vulcan Iron Works, 60 Mo. 35; Patterson v. Ry. Co., 76 Pa. 389; Hawley v. Ry. Co., 82 N. Y. 370; Buzzell v. Luconia Mfg. Co., 48 Maine, 113; Flynn v. Ry. Co., 78 Mo. 195.

Another exception is still more firmly established, that a master is bound to keep the work which he requires his servant to perform in a reasonably safe condition for that purpose. And if the master possesses superior knowledge of the danger attending the service, or has a better opportunity of estimating the danger, then it becomes his duty to properly protect his servant in his work or notify the servant of the increased hazard, and if the master fails so to do and the servant is injured, the liability becomes fixed. Madden v. Minn. Ry. Co., 32 Minn. 303; Haley v. Case, 142 Mass. 316; Ferrin v. Ry. Co., 143 Mass. 197; Hawley v. Ry. Co. 82 N. Y. 370; Doyle v. Bayard, 6 N. Y. Supplement, 517; Kaare v. Troy Steel and Iron Co., 19 N. Y. Supplement 789; Van Tassel v. Ry. Co., 20 N. Y. Supplement, 708.

Applying these rules to the case at bar W. M. Cunningham had the entire charge of the management of the digging of the ditch, and had charge of the defendant's business in that capacity for several years. His knowledge was complete, while the plaintiff was entirely ignorant of everything pertaining to

the work.   He was a vice principal, and not a co-employe, and his neglect was the neglect of the defendant company.   Lalor v. Ry. Co., 52 Ill. 401; Gormley v. Vulcan Iron Works, 61 Mo. 492; Pantzer v. Tilley Iron Mining Co., 99 N. Y. 368.  It is only one of those risks which could not be obviated by the adoption of a reasonable measure of protection by the master, that the servant assumes.   Kaare v. Troy Steel and Iron Co., 19 N. Y. Supplement 789; Pantzer v. Tilley Foster Iron Mining Co., 99 N. Y, 368; Ry. Co. v. Herbert, 115 U. S. 650; Freeman v. Glens Falls Paper Mill Co., 15 N. Y. Sup. 657; Booth v. Ry. Co., 73 N. Y. 38; Strahlendorf v. Rosenthal, 30 Wis. 674.

The case of Boyle v. Blair, 6 N. Y. Sup. 517, is directly in point with this case, and we consider effectually disposes of it. McDonald v. Ry. Co., 43 N. W. R. P. 380; Ry. Co. v. Fitzpatrick, 31 O. S. 487; Ferren v. Ry. Co., 143 Mass. 197; Haley v. Case, 142 Mass. 316; VanTassel v. Ry. Co., 20 N. Y. Sup. 708.

FULLER, J.  Plaintiff was a laborer in the employ of defendant and was, with about 25 co-laborers, engaged, at the time he received the injury for which he brings this suit to recover $5,000 damages, in digging a trench six feet in depth, in which to place water pipes or mains for the extension of the defendant's system of waterworks in the city of Sioux Falls.  At the time of the accident plaintiff had been thus engaged for 13 or 14 days, and had been in the employ of the defendant upon a former occasion, and about one year prior to this time.   There were, at the time of the accident, about 15 other men engaged in placing the pipe and in replacing the earth which had been excavated, and all were under the immediate supervision of defendant's foreman, W. M. Cunningham, by whom plaintiff was employed, and by whom the work was being personally conducted.   The street in which the men were digging had been graded and filled in something over a year before the accident, the greatest depth of the fill being about five or six feet, and at the place where the plaintiff was at work, and where he was injured.   The

street was 80 feet wide, and was graded and filled in with yellow clay, the banks sloping to the property line on each side. Mr. Cunningham assigned to each man a place 10 feet in length which was to be excavated to a depth of six feet, and each man was directed to throw all dirt on the east side, and thus the west side of the ditch was left clear, so that the men would have a smooth surface on which to work in placing the lengths of pipe in the ditch, where they were connected and covered by replacing the earth which had been thrown out of the trench. The plaintiff had gone down with that portion of the ditch which he was digging to a depth of nearly six feet, and had reached and was throwing out the black earth, which was the original surface before the street had been filled in with the yellow clay taken from a cut in the vicinity of the place where the plaintiff was at work, when the east wall of the ditch, together with the dirt which had been thrown upon the bank, caved in upon the plaintiff, and caused the injury of which he complains and for which the jury gave him a verdict for $5,000. The grade was comparatively uniform, and it appears that there were no obstructions to prevent any one from seeing the fill as far as it extended. It would seem that a person standing on the center of any portion of the fill could look down on either side, and observe the depth of the fill about as readily as he could observe the water from a bridge placed five or six feet above and extending across a flowing stream. There was no sand or gravel mixed with the yellow clay of which this fill was composed, and the bank of the cut from which the street was filled, though about 15 feet in height, remained intact, and stood perpendicular at the time of the trial. Letters and characters cut in these banks some time prior were noticeable, and remained in their original condition. There is no direct evidence that clay of this kind, which has been placed in a fill for more than a year, and subjected to the elements and the weight of objects almost constantly passing over it, would be more likely to cave and fall into a ditch which was being dug

through it than ordinary earth which had remained undisturbed for many years without being thus subjected, and a court would not take judicial notice that the hazard or liability to be injured was greater than is usually incident to the employment in which the plaintiff was engaged. Other men, having like opportunity to observe, and who were plaintiff's co-laborers, and witnesses in his behalf, knew that the trench was being dug through a fill, and we are unable to understand how Cunning-ham could have known, under the circumstances, anything about the probability of danger that was not within the knowledge of the plaintiff, as indications that banks of this kind were about to give way and cave in would ordinarily appear to one in the trench before they would be noticeable to a person standing upon the surface and at the side of such trench.

Upon the trial the plaintiff testified as follows: ''Q. Well, now, the last dirt you threw up that day before it caved, what kind of dirt was it? A. Black soil in the bottom. Just got down to the black soil. Q. Then you were digging right through dirt which had been put there? There was a fill, wasn't there? A. I suppose it was a fill. Q. Don't you know that it was? A. I never knew anything about it.'' That the clay composing the fill slipped upon the black earth near the bottom of the trench, and thereby crumbled and caved in upon the plaintiff, seems to be the accepted theory as disclosed by the record; but there was nothing to indicate that plaintiff had reason to believe that there was danger from that source before the injury occurred. Plaintiff, who dug the ditch, and had an opportunity to observe the effects of removing the earth, if any were noticeable as the work progressed, testified that he apprehended no danger; and, taking into consideration the fact that the ditch was but six feet deep when completed, and the further fact that there were no stones or gravel to weaken the walls, or increase the liability of injury in case the same should give way the fact that plaintiff was injured appears to be one of those unforseen casualities to be regretted by all, and for

which none are responsible. It has been repeatedly held that under such circumstances there can be no recovery. If neither party knew, or by the use of ordinary prudence and power of observation could have discovered the danger, the accident was unavoidable, and there is no liability. Money v. Coal Co., 55 Iowa 671; Railway Co. v. Britz, 72 Ill. 256; Olson v. McMullen; 34 Minn. 94, 24 N. W. 318; Walsh v. Railroad Co., 27 Minn. 367, 8 N. W. 145. Water Supply Co. v. White, 124 Ind. 376, 24 N. E. 747, was a case tried on a state of facts nearly identical with the present, and in reversing a judgment for plaintiff, the court says: "An employe injured by the caving in of a ditch which he is assisting to construct through a soil composed largely of sand and gravel cannot recover for such injury, since the liability of the trench to cave in, and the danger, are alike open to the observation of all parties." In the case of Anderson v. Winston, 31 Fed. 528, it appears that a day and a night gang of men were employed in excavating a tunnel through a hill in the city of St. Paul. The plaintiff, while working with the night gang, under a foreman, was injured. There was a judgment for defendant, and plaintiff appealed. From the opinion we quote the following: "A crack was formed shortly after a blast in the afternoon of the day before the accident, and sometime during the morning there was a slide of earth, and plaintiff was injured. It is claimed that the foreman of the gang saw the crack, and did not inform the men of the fact that it was a dangerous place and plaintiff was ordered to go to work there. The evidence of all the parties, with the exception of one, who testified as to the character of the excavation, goes directly to the point that the foreman saw the crack, and that they all saw it. Anderson testifies that he did not see it, but it is obvious that, if there was any danger, it was as apparent to Anderson as to any one else." The judgment for defendant was sustained. The case of Olson v. McMullen, *supra*, was one in which the plaintiff, who was alleged to be an ignorant person, and unable to under-

stand the English language, was injured while wheeling earth in a wheel-barrow to uncover a stone quarry, under the direction of a foreman. He had to wheel the earth along a path two or three feet wide, and on one side of it was a precipitous excavation about 15 feet deep, and on the other side was a bank or wall of earth 15 feet high, nearly perpendicular, and in some places overhanging the path. It was in the spring, when the frost coming out of the earth increased the liability of danger. As plaintiff, with a wheelbarrow of earth, was passing along the path, a part of the earth in the wall broke away and fell, striking plaintiff and his wheelbarrow, and throwing them into the excavation and he was hurt. After stating the facts substantially as above, GILFILLAN, C. J., speaking for the court, continues: "Plaintiff had worked in the same place from one to two weeks before the accident. He appears to be of mature years, and, though ignorant of some things, of ordinary capacity. He must be presumed to have had the knowledge which common observation forces on the most ordinary intellect, to have known the effect and operation of the laws of gravitation and of thawing frost upon a perpendicular bank of earth. He must be presumed to have known that from such causes the earth will break away and fall down, and that the fall must be attended with danger to anyone in its way. As the danger was as well known to him as to the foreman, he must be taken to have assumed the risk, and cannot hold others responsible for the consequences."

Learned counsel for respondent cite Doyle v. Baird (Com. Pl. N. Y.) 6 N. Y. Supp. 517, as a case directly in point, and effectually disposing of the case before us; but that case, in our opinion, is unlike this in some essential particulars. There plaintiff was sent, apparently for the first time, into a large ditch, already completed, nine feet deep and seven feet wide, and was ordered to do work therein, which would draw his attention entirely from the walls of the trench, and require him to assume a stooped or bent position; and, when thus engaged,

the wall of the trench caved in upon him and he was seriously injured. Several witnesses testified that no supports or stays of any kind to sustain the banks at the time of the accident were in use, and various experts testified and concurred in the opinion that in a trench of the general character and size described, dug in made ground, some precaution in the way of bracing, or large girders, or careful sloping in the excavation was necessary. Upon these facts it was held that the court erred in dismissing plaintiff's complaint, and in finding as a matter of law that defendant was in no way liable. It seems to us that the cases are clearly distinguishable. Had plaintiff's opportunity to know his surroundings been limited, as in the case of Doyle, that fact alone might support a different view. In that case there is nothing to show that the plaintiff knew, or by the exercise of ordinary observation might have known, that the trench was dug in made ground; and, if that fact was an element of danger (and it seems to be so treated in that case), it does not appear that the plaintiff knew, or the circumstances were such that he ought to have known, such fact; and under all the circumstances and facts disclosed by the record in this case, we are convinced that the plaintiff ought not to recover. Mr. HARRIS, in his recent treatise on the Law of Damages by Corporations, in volume 1, at page 292, in discussing the subject here under consideration, says: "In such cases the servant takes upon himself the hazard of an injury which may arise in the course of his business or employment. The master is, no doubt, bound to provide for the safety of his servant in the course of his employment to the best of his judgment, information and belief, but the servant is not bound to risk his safety in the service of his master, and may, if he thinks fit, decline any service in which he may have reason to apprehend injury to himself; and in most of the cases in which danger may be incurred, if not in all, he is just as likely to be acquainted with the probability and extent of it as the master."

At the close of plaintiff's case and before the introduction of any evidence on the part of the defendant, a motion was

made to direct a verdict for defendant upon the ground that no cause of action had been proven, as the evidence did not show a state of facts entitling the plaintiff to recover. The plaintiff was of mature years, of ordinary intelligence, and in the apparent possession of all his faculties. The evidence introduced subsequent to the motion for a verdict did not tend to strengthen plaintiff's case in the particulars under consideration, and, in our opinion, the motion should have been sustained. As we view the case it is unnecessary to consider the other matters presented by the learned counsel upon the argument; and the judgment of the trial court is reversed, and a new trial is granted.