## CARLSON v. SIOUX FALLS WATER CO.

1. While the rule is general that the servant takes upon himself the risks necessarily incident to his employment, still, if the employer has knowledge of some latent hazard which the servant does not know, and which, with proper diligence or reasonable observation, he would not know, he ought not to be held to have assumed such concealed hazard.

2. But where the facts or conditions which increase the ordinary hazard are so open and obvious as to be plainly apparent to and understood by the servant, without effort on his part, he is bound to so see and understand; and, if he continue work without objection, he will be held to have assumed such risk.

3. In such case the employer is not required to inform the servant of facts which he is justified in believing the servant already knows and understands.

(Syllabus by the court. Opinion filed Nov. 22, 1895.)

Appeal from circuit court, Minnehaha county. Hon. FRANK R. AIKENS, Judge.

This case was first decided by this court in an opinion reported in 5 S. D. 402, 59 N. W. 217, in which opinion the judgment of the court below in favor of plaintiff was reversed. Thereafter a rehearing was ordered in the case. This opinion is upon the rehearing. The former decision adhered to. ·

The facts are stated in the opinion.

*D. R. Bailey* and *Davis, Lyon & Gates*, for appellant.

Negligence cannot be predicated alone upon the fact of the injury. Minty v. Railroad 4 L. R. A. 409. A duty devolves upon the master before putting the servant in charge of dangerous machinery, to instruct and qualify him in the proper management of it. Brazil v. Gaffney, 4 L. R. A. 850; Hickey v. Tooffe, 105 N. Y. 26; Dowling v. Allen, 74 Mo. 13; Sullivan v. India, 113 Mass. 396.

*Palmer* and *Rogde*, for respondent.

KELLAM, J. This case was decided at a former term, and is reported in 5 S. D. 402, 59 N, W. 217. We then reversed the judgment, which was in favor of respondent, but, upon his application, allowed a rehearing of the cause, and it is now before us after such reargument. The action was for the recovery of damages resulting from a personal injury to respondent alleged to have been occasioned by the negligence of appellant. The respondent, with a number of others, was employed by appellant as a laborer, in digging a ditch in one of the streets of the city of Sioux Falls, in which to lay the water pipes of appellant. The natural surface of the ground over which the street was laid was uneven and undulating. To bring the street to grade, the high places had been cut through, and the low places filled up the width of the street—80 feet; so that, through the fills, the ditch was dug through made ground. At the point of the accident the ditch was "from four to five" to a little more than six feet deep, the witnesses not agreeing strictly as to its depth. While so digging in this ditch, and at the depth indicated, one wall of the ditch, suddenly giving way, caved in and upon the respondent, causing the injuries complained of. The earth from the ditch was, by direction of the company's foreman, thrown upon the east side, so as to leave the other side clear and unobstructed for the handling of the pipe by the men who followed for that purpose. It was the east bank which gave

way—occasioned, possibly, as both sides seem to presume, by the sliding of the new or filled earth from the old; induced, perhaps, if the above theory. is correct, by the superadded weight of the earth thrown upon that side of the ditch. These are the general facts upon which respondent recovered in the trial court. Particular portions of the evidence, which seem to have a bearing upon appellant's liability, will be noticed as we proceed.

Respondent concedes that the general rule of law governing liability in such cases was correctly stated in our former opinion, but argues that the established facts in this case put it within a class of well-defined exceptions to the general rule, which recognize and declare the master's liability when he has knowledge, superior to that of the servant, of facts which would naturally increase the hazard of the employment, which he fails to providently guard against, or communicate to the servant, so as to put each upon an equal footing as to knowledge of the risk. That such a case as here outlined should be excepted from the general rule is reasonable and fair. to both employer and servant. While it is true that in general the servant takes upon himself the risks necessarily incident to the employment, still, if the employer has knowlege of some latent hazard, which the servant does not know, and which, with proper diligence or reasonable observation, he would not know, he ought not, in justice, to be held to have assumed such concealed hazard, known only to the employer. The facts in respect to which it is claimed that appellant had knowledge superior to that of respondent, and which increased the hazard of the employment, were that the ditch was being dug at the place of the accident through filled earth, and the length of time the added or filled earth had been there. While there was no direct evidence that filled earth is more likely to slip or cave than the same earth in its natural bed, it may be safely assumed, as it seems to have been on the trial, that such is a general fact, resulting from natural laws, understood by both parties, and of which,

neither would have superior knowledge. It is undisputed that appellant, through its overseer, Cunningham, had actual knowledge that the excavation at the place of the accident was through earth that had been brought from a neighboring cut and placed there to bring the street up to grade. Did Carlson, the respondent, know it, or know the material fact that it was filled-in earth, or, if not, are the proved facts and circumstancs such as will permit him to take advantage of his actual want of knowledge? In other words, upon the undisputed facts, does the law charge him with such knowledge? What is Carlson's evidence as to his actual knowledge? He was asked, "Did you know anything about there being a fill up there on Minnesota avenue, where you were digging?" His answer was, "I never know [this is the word in the abstract, but was probably intended for "knew"] anything about it." He made the same answer to a similar question on cross-examination, the context being as follows: "Q. Well, now, the last dirt that you threw up that day, before it caved, what kind of dirt was it? Black soil? A. Black soil in the bottom. Just got down to the black soil. Q. Then you were digging right through dirt that had been put there. There was a fill, wasn't there? A. I suppose it was a fill. Q. Don't you know it was? A. I never know anything about it. Q. Now, Mr. Carlson, didn't you know this dirt had been taken from this deep cut, and taken right there? A. Well, we never looked at the grade." Prior to this he was asked: "How far had you got down with your ditch, at the point where you was digging, at the time of the cave-in? A. Near six feet, I guess. Q. How near down were you to the old road before the fill? A. Clear down to the old ground." We do not propose to discuss the effect of this evidence upon our own minds, for the jury has found that Carlson did not know that there was a fill there, or that he was digging through earth that had been laid or built up on "the old ground"; and we are not prepared to say that, if Carlson's right to recover had turned alone upon his actual knowledge of

the character of the ground through which he was digging, that question might not, upon the evidence exhibited, have properly been submitted to the jury. But, to bring the case into the class of exceptions referred to, it must not only appear that Carlson had no actual knowledge of the facts which increased the ordinary hazard, but that by the reasonable use of the usual faculties of observation and judgment, which every man presumably has, he would not have discovered and known the same. We do not think that in a case like this the court should be particularly zealous or astute in hunting out facts for the purpose of establishing such conditions; but where the facts which increase the ordinary hazard are so open and obvious as to be plainly apparent to the injured party, without effort on his part, then his nonobservation and consequent want of knowledge ought not to be held execusable. This thought was expressed in the court's charge to the jury. "If Carlson knew it [the condition of the earth where he was digging], there was no need of calling his attention to it, or, if he might have known it with the exercise of ordinary prudence and care, there was no need of calling his attention to it." This is not only reasonable in principle, but is the express rule of the adjudicated cases. Money v. Coal Co., 55 Iowa, 671, 8 N. W. 652; Anderson v. Winston, 31 Fed. 528; Water Supply Co. v. White, 124 Ind. 376, 24 N. E. 747. There is no doubt about what the law is, and the only question now and here is, where the character and conditions of the earth through which he was digging, and all other facts, if any, out of which the increased danger grew, so plainly visible to and apprehensible by Carlson, in the ordinary and reasonable exercise of his natural senses, as to charge him with the duty of seeing and knowing? If so, the employer was guilty of no negligence in the respect under consideration, for he was not required to inform him of facts which he was justified in believing he already knew and understood.

As already stated, this street—Minnesota avenue—had been graded by cutting through the elevations and filling up

the depressions of the natural surface.　At the place where the accident occurred, there was evidently nothing to prevent one standing by the side of the ditch from looking either way, and observing the lower natural ground.　Mr. Brown says that at that place he steped down off the grade to the natural ground, and observed the depth of the fill; that it was about five feet deep at that point (and described the appearance of its sides), and that there was nothing "to prevent any one seeing it is a fill all the way through, as far as it is filled"; that it is "perfectly plain to see all the way through there."　Mr. Emerson's testimony was to the same effect.　He says that "at any point along that street, from the railroad track south," which would be along the line of this ditch, this fill is "perfectly plain"— "couldn't help seeing it."　There is no evidence tending to contradict or qualify the testimony of these witnesses, except that of Carlson, who testified that he saw and knew of the cut, but neither saw nor knew of the fill; but, in the absence of anything suggesting an excuse for his not looking or seeing, plaintiff cannot base a cause of action upon the result of his not seeing what was perfectly plain to be seen, and what anyone, from any point along that street, could not help observing.　Mr. Peterson, the next man to Carlson in the ditch, did not see the earth put there, but still he knew it was a fill.　Mr. Johnson, another digger in the ditch, knew it was a fill, though ·he did not see the fill made, or know where the added earth came from. These two were the only laborers besides Carlson who were witnesses.　Both evidently knew it was a fill from observation, and there is nothing to show that Carlson had not equal facilities and means for observation as they.　He had been digging in this street two days.　Each man took a section three times the length of his shovel, and, when that was dug out, went ahead, and took another section of the first unoccupied ground. The fill was the deepest at the place of the accident, so that, in excavating his former section or sections, he must have dug down below the bottom of the fill, and into the old ground.

The uniform testimony of all the witnesses was that the filled earth was yellow, and the natural soil was black. This fact could not—or at least ought not to—have escaped his observation. Whenever he came to the line between the yellow and black earth he could not help noticing it, and it seems incredible that he should not have known what it meant. Whatever was plainly observable to one situtated as he was, either with respect to the street having been filled, or to the character or condition of the earth in and through which he was digging, he was bound to see. As said by the court in Walsh v. Railroad Co., 27 Minn. 367, 8 N. W. 145, ''He was bound to make use of his eyes to see a source of danger which was open and apparent to anybody who would use his eyes.'' Upon all the evidence in this case, we cannot escape the conclusion that Carlson ought to have observed and known, and was bound to know, that this street where he was digging had been filled in, and that he cannot base a cause of action upon his want of knowledge of such fact. The exact time when the fill was put there—whether one year or five years before—was only important as it would bear upon its then condition with regard to its solidity, firmness and adhesiveness, and these were all qualities of which one working with a shovel in that very earth was better able to judge than one who simply knew the general fact of when the fill was made.

There is another feature of this case which seems entitled to at least a passing notice. It seems to be presumed by both sides that the caving of this ditch resulted from the sliding of the new earth upon the old when its lateral support was removed by digging out the ditch. But whether this filled earth would be inclined to slide towards the ditch or not would depend upon the conformation of the old ground. If at that point the surface of the old ground dipped down and away from the ditch, the inclination to slide would, of course, be the other way. Mr. Brown testified that at the place of the accident the fill was deeper on the east side than on the west. This would

indicate that at that point the general dip of the original surface was to the east, and away from the ditch, so that the new earth on the east side of the ditch, which was the side that caved, would, under the influence of gravitation, be inclined to move away from, instead of toward, the ditch.  It is true that at this very point, underneath the fill, there might have been an unevenness on the surface of the old ground, not corresponding with the general contour, which would give this new earth at that point an inclination to slide the other way, and into the ditch; and this is, we think, the most plausible theory in explanation.    But in respect to this, if such were the fact, and it had anything to do in causing the accident, there is nothing to show that the employer had knowledge, or sources of knowledge, superior to the servant.

We conclude, not with hesitation, but with reluctance, that upon the evidence in this case the plaintiff was not entitled to recover, and the court should have granted the defendant's motion to direct a verdict in its favor.    We have given the case unusual attention, because we have felt inclined to sustain this judgment, but we find ourselves unable to do so.    The former decision is adhered to.