PETERSON, Respondent, v. OTHO DEVELOPMENT & POWER COMPANY, Appellant.

(166 N. W. 147.)

(File No. 4221.  Opinion filed January 18, 1918.)

1.  **Master and Servant—Servant's Injury From Explosion In "Misfire" Hole—Improper Fuse—Proximate Cause—Increased Risk, Result of, Burden of Proof.**

In a suit to recover for injury to plaintiff employee in defendant's mine, the injury having been caused by explosion of dynamite placed by a previous shift of miners, but which had not exploded with other dynamite similarly placed for explosion, the explosion in question being caused by the drill used by plaintiff coming in contact with the dynamite in a mis-fire hole, held, upon question of mine owner's negligence, that where such owner is negligent in furnishing improper fuses to

a former shift in its blasting operations, and the chance of there being such mis-fire holes was greatly increased by use of such fuses, the burden of proof is upon employer who negligently increases a known risk resulting in injury, to show that it did not occur because of increased risk.

2. Same—Injury to Servant—"Reasonably Safe Place to Work," Proper Precautions As Affecting—Rule.

Whether a place is a reasonably safe place in which to work, depends, not upon its actual freedom from danger, but upon whether employer has used all proper precautions looking to making and keeping such place as safe as the nature of the business conducted therein will reasonably permit.

3. Same—Injury to Employee Miner—Experience of Servant, Knowledge of Master's Negligence, Effect, Re Assumption of Risk.

The rule of assumption by an employee of risks from danger resulting from employer's negligence, being that, while he assumes no such risks of which he has no notice, he yet assumes even such risks if he had, or ought to have obtained knowledge thereof, the evidence showing that plaintiff employee was an experienced miner, that he believed that a fuse used in the mines wherein an explosion of dynamite placed by a previous miner's shift had missed fire when sought to be exploded by them, was defective, and knew the shaft was damp, had had many mis-fires, that a prior shift had reported mis-fires; that he made all possible effort to find the mis-fire holes and found nothing; that nevertheless he continued to work, held, that he assumed the risk of injury from a mis-fire blast, although the employer was negligent in furnishing such fuses; and it was immaterial whether employee knew the causes, or as to whether the risks resulted from employer's negligence.

Appeal from Circuit Court, Pennington County.  Hon. LEVI McGEE, Judge.

Action by Charles Peterson, against the Otho Development & Power Company, a corporation, to recover for injury received by plaintiff as defendant's employee.  From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed.

*Schrader & Lewis,* for Appellant.

*Frank D. Bangs,* for Respondent.

(1)  To point one of the opinion, Respondent cited:

Am. W. G. Co. v. Noe, 158 Fed. 777, 86 C. C. A. 133; Re burden of proof; Nadua v. White River Lumber Co., 43 N. W. 1135.

(3)  To point three of the opinion, Appellant cited:

Sec. 1449, Civ. Code; Conradson v. Osceola Co. (Mich.) 146 N. W. 638; Notes and brief following Schurer v. Banner Rubber Co. 28 L. R. A. (N. S.) 1215-1224, Inc., and cases cited.

Respondent cited:

Martin v. Des Moines Edison Light Company, 106 N. W. 359 (Ia.)

WHITING, P. J.   This action was brought to recover damages alleged to have been suffered by plaintiff by reason of an injury received as a result of defendant's negligence.   Verdict and judgment were for plaintiff.   From such judgment and an order denying a new trial, this appeal was taken.

Appellant assigns the insufficiency of the evidence to support the verdict.   Respondent was engaged as a miner in the sinking of a shaft on appellant's property.   While drilling a hole his drill came in contact with and exploded a heavy charge of dynamite that was in what is known as a "miss-fire" hole.   The miners would drill a number of holes in the floor of the shaft, would then charge them with dynamite, and, by means of fuses, attempt to fire all the charges at one time.   When it happened that, for any cause, one of such charges failed to explode, the drill hole containing such charge was spoken of as a "miss-fire" hole.   It was from the explosion of the charge in a miss-fire hole that respondent was injured.   This miss-fire hole resulted from the failure of a prior shift of miners to explode all the charges of dynamite by it placed in drill holes.   Respondent alleged that appellant had been negligent in several particulars:   In not giving him notice of the existence of the miss-fire hole, in not providing a reasonably safe place in which to work, and in not furnishing him and his fellow workmen with safe and proper tools and appliances, including powder, caps, fuse, ignition aparatus, etc.   None of such allegations had any support in the evidence save the allegation that appellant had failed to provide a reasonably safe place for respondent to work.

[1, 2]   If the shaft was not a reasonably safe place at the time of this accident, it was solely because of the miss-fire hole; and it was a reasonably safe place to work unless such miss-fire hole resulted from the use of improper fuse.   If a proper fuse was used and there yet occurred a miss-fire which rendered the shaft less safe, such increased unsafety would be merely an in-

cident to a properly conducted mining business, and the shaft wherein it existed would still be a reasonably safe one— in other words, whether or not a place in which employes are asked to work is a reasonably safe one depends, not upon its actual freedom from danger, but upon whether the employer has used all proper precautions looking to making and keeping such place as safe as the nature of the business conducted therein will reasonably permit. There was thus presented to the jury two questions: (a) Was an improper fuse furnished to the former shift and used by it when attempting to fire the charge in this miss-fire hole? (b) If so, was the miss-firing of such hole traceable to the use of such improper fuse? An affirmative answer to the first would be a finding that appellant was negligent. An affirmative answer to the second would be a finding that such negligence was the cause of respondent's injury. There was ample evidence to support an affirmative answer to the first question. There was also ample evidence that, while there were liable to be miss-fire holes even though proper fuse was used, the chance of there being such miss-fire holes was greatly increased by the use of the improper fuse. When an employer negligently increases a known risk and an injury occurs, the burden should certainly rest upon such employer to show that such injury did not occur because of that which increased the risk.

[3] But appellant pleaded assumption of risk. The rules of law relating to what is termed assumption of risk are too well established to call for any citation of authorities, though the basis upon which such rules rest may be in more or less dispute. An employe assumes all such risks incident to his employment as are not the result of the employer's negligence. An employe assumes no risks from dangers resulting from his employer's negligence, except where he has notice of such risks; but he will be regarded as having assumed even such risks as result from his employer's negligence if he had, or ought to have obtained, knowledge of such risks before his injury was received. There are exceptions to this last rule, as in the case where an employe continues in an employment, though subject to extraordinary risks caused by his employer's negligence, because of a promise that the cause of such extraordinary risk will be removed. When referring to an employer's negligence in connection with the rules pertaining to

assumption of risks, we include under the term "negligence" any and every failure of the employer to fulfill his obligation to provide for his employe's safety.     Under the above rules, did the testimony of respondent disclose that he assumed the risk of the explosion which caused his injury?     It clearly did.     According-ing to his testimony he was an experienced miner; he had been working for appellant about two months at the time of the acci-dent;the shaft was a very wet one; in wet shafts there are more miss-fire holes than in dry shafts; in this shaft there were a greater per cent. of miss-fire holes than he had ever known of in other shafts in that section; he did not know of any shifts working in this shaft but that had miss-fire holes; he did not know the kind of fuse used in the miss-fire holes; he did not consider them the best quality; he told the superintedent of the mine that "they were not the best they ought to be"; he was advised that the former shift reported that there were two miss-fire holes; there was no way of notifying an on-coming shift as to location of miss-fire holes; he made all possible effort to find the miss-fire holes and found nothing; and he came to the con-clusion that there was no miss-fire hole.     We thus find that, while respondent did not know what kind of fuse was being used, he believed a defective fuse was being used and he was fully advised as to the unusual risks connected with working in this particular shaft under the existing conditions.     Being fully advised as to the risks it was immaterial whether he knew the causes and also immaterial as to whether those risks were brought about by negligence on part of appellant.     The jury might have been justified in finding that there was no assumption of such extra risk as was caused by appellant's failure to pro-vide proper fuse, if there had been any evidence upon which it could have based a finding that respondent did not comprehend or understand the risks incident to working in this particular shaft, or if there had been any evidence that, comprehending such extraordinary risk, he continued to work because of a promise that the cause of such extraordinary risk would be removed. It cannot be said that, because he concluded there was no miss-fire hole, he did not comprehend the risk.     If proper fuse had been used and a miss-fire hole had been reported, no one could claim that an employe who, after receiving such report, continued to

work ·in· the shaft, did not assume the risks incident to the possible existence of such a miss-fire hole, although, after examination, he failed to locate the hole and concluded there was none. Such a risk was one clearly assumed by an experienced miner.

The evidence bearing upon the question of contributary negligence was conflicting, and it would ·serve no useful purpose to review it.

Appellant assigns error in the instructions given. There was certainly much conflict in the several instructions given, especially those relating to a safe place to work, and those relating to the matter of superior officer. Such conflict will undoubtedly be avoided upon a new trial and the instructions given be in harmony with our views as above announced.

The judgment appealed from is reversed.