GRANDPRE, Appellant, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

(190 N. W. 323.)

(File No. 5013.    Opinion filed October 27, 1922.)

1. **Master and Servant—Railroads—Independent Contractor—Pumping Plant Operator held Not an Independent Contractor.**

    Where plaintiff and another were employed to operate a pumping station during the absence of the day shiftman, the payroll account being carried in the name of plaintiff, who settled with his co-worker, plaintiff was not an independent contractor, but an employee.

2. **Master and Servant—Assumption of Risk—Railroads—Presumptions—Risk of Operating Belt Without Shifter Assumed by Experienced Employee.**

    Where a skilled mechanic experienced with similar machinery was injured in throwing off a belt operated without idler pulley and belt shifter, the defective conditions being open and obvious, he was conclusively presumed to have knowledge of the defects so as to charge him with assumption of risk.

3. **Master and Servant—Assumption of Risk—Doctrine of "Assumption of Risk" Stated.**

    "Assumption of risk" rests on the conception that an employee in accepting employment impliedly agrees to assume all risks of which he is cognizant, and which are necessarily attendant upon the occupation.

4. **Master and Servant—Negligence—Contributory Negligence—Doctrine of "Contributory Neglicence" Stated.**

    "Contributory negligence" rests on the theory that the employee impliedly agrees to use reasonable care to avoid injuries to himself, which may result from the ordinary hazards of the occupation.

5. **Master and Servant—Assumption of Risk—Negligence—Risk of Master's Negligence Not Assumed.**

An employee assumes no risk arising from the negligence of the employer in failing to keep his place, tools, and appliances in as safe condition as they were when the contract of employment was made.

6.  **Master and Servant—Coercion—Risk Not Assumed by Employee Urged to Dangerous Act.**

The employer is not exempt from liability for injury, where the employee, urged or coerced by his employer, does an act in the course of his employment which he knows to be dangerous, and which he would not have done except for the actual or implied coercion of the employer.

7.  **Master and Servant—Assumption of Risk—Risk Not Assumed by Employee Induced to Continue Use of Defective Appliance.**

The employer is not exempt from liability for injury where the employee is induced to continue the use of defective appliances by the promise of the employer to repair the defects.

8.  **Master and Servant—Assumption of Risk—Evidence—Burden of Proof—Burden on Employee to Prove Promise to Repair Induced Use of Defective Appliances.**

The burden is on the employee to prove that he was induced to continue to use defective appliances by reason of the promise of the employer to repair.

9.  **Master and Servant—Assumption of Risk—Proof of Continuing Work After Promise to Repair Held Insufficient to Take Question of Assumption of Risk to Jury.**

Proof of the employer's promise to repair a defective belt-shifting apparatus and that the employee continued to work are alone insufficient to take the question of assumption of risk to the jury, but there must be something in the evidence from which the jury might infer that the promise caused the employee to continue to work.

Appeal from Circuit Court, Day County; Hon. Frank Anderson, Judge.

Action by Ward Grandpre against the Chicago, Milwaukee & St. Paul Railway Company. Judgment on directed verdict for defendant, and plaintiff appeals. Affirmed.

See also, 44 S. D. 95, 182 N. W. 527.

*Rex Harris,* of Webster, *Morton Barrows,* of St. Paul, Minn., and *Davis & Michel,* of Minneapolis, Minn., for Appellants.

*E. L. Grantham,* of Aberdeen, and *C. O. Newcomb,* of Minneapolis, for Respondent.

(1) ' The point one of the opinion, Appellant cited: Polluck v. R. R. Co. (S. D.), 166 N. W. 640; C. R. I. & P. R. R. Co. v. Bond, 240 U. S. 449.

Respondent cited: C. R. I. & P. Ry. Co. v. Bond (Okla.), 148 Pac. 103, 240 U. S. 449, 60 L. Ed. 735; Polluck v. M. & St. L. Ry. Co. (S. D.), 166 N. W. 641.

(3) and (4) To points three and four, Appellant cited: Seaboard Air Line v. Horton, 233 U. S. 492, 58 Fed. 1062.

Respondent cited: Schneider v. Bosley (S. D.), 165 N. W. 1.

SMITH, J.   Action for personal injuries.   Respondent Railway Company owned and operated a pumping plant at Bristol, which was equipped with a gasoline engine having two drive pulleys, one operating an air compressor lifting water from a deep well into a reservoir, the other operating a pump conveying water from the reservoir into a tank for the use of locomotice engines. The drive pulley on the gas engine was 18 inches wide, accommodating the shifting of the belt from a 6-inch tight pulley to a 6-inch loose pulley on the pump. ' Shifting the belt ordinarily had been effected by the use of a loose rod braced in a socket in the floor near the pump, by which the pump belt was pushed over from one pulley to the other. About the 17th day of July, 1917, the loose pulley, having been broken, was taken off for repairs. From that day until some time in October following, the belt was operated without the loose or idler pulley. The pumping plant had been operated in two shifts; one Brennan on the day shift and one Roed on the night shift. Porter was repair man in the employ of the company. It was his duty to keep pumps and machinery in pumping stations in repair, and to order supplies therefor. He had men in charge operating the different pumping stations.

About September 27th, Brennan, the day man, desired to take a lay-off. Grandpre and one Moxness were in charge of separate grain elevators located short distances from the pumping station, and were acquainted with Brennan. Neither could devote all his time to the work, but between them could find time during the day to keep the tank full of water. Brennan was acquainted with these men, knew they were experienced in such work and suggested that they might be employed. Porter, who had to do with the employment of men at the various pumping stations, took

up, at Brennan's suggestion, the matter of lay-off with McCarthy, his superior officer, and thereafter told Grandpre and Moxness that it was all right for them to go to work; that he could not carry both of them on the pay roll, but that he would carry the account in Grandpre's name, and Grandpre could settle with Moxness. Their joint duty was to operate the pump and keep the tank full of water on the day shift. Porter had other men operating the plant during the night shift. Men thus employed were paid monthly wages by the company. Appellant Grandpre, had had years of experience with belt driven machinery, and had operated a similar pumping plant for the city of Bristol for a year. He began work on the 22d day of September, and was injured on the 27th. Because of the effect of the injuries received, he appears to have been unable to give any clear account of the manner in which the injury occurred. It appears that the pump conveyed the water from the reservoir into the tank much more rapidly than the air compressor filled the reservoir from the well, and for that reason the air compressor had to be operated at times when the pump was idle. To do this, the pump belt was ordinarily thrown off the driving pulley onto the idler pulley on the same shaft. At the time of the accident and some months prior to plaintiff's employment, the idler pulley had been removed for repairs, and, to stop the pump when necessary, the belt had to be thrown off on the floor. It is assumed as probable that the accident occurred when Grandpre attempted to stop the pump in that way.

[1] It is suggested by respondent that Grandpre was an independent contractor, and for that reason, respondent was not liable for injuries thus received. Without attempting a critical review of the facts relied upon, or a discussion of the law relating to independent contractors, we are of the view that the doctrine of independent contractor has no application to the facts disclosed by the record in this case. We are of the view, however, that the rule relating to assumption of risk is decisive upon the facts disclosed. Appellant was not an inexperienced man, ignorant of the dangers involved in the work which he undertook to do; he had had years of experience with similar belt-driven machinery, and was a skilled mechanic. If the operation of the plant was dangerous because of the absence of the idler pulley, or of a

proper belt-shifting apparatus, these conditions were in existence and were open and obvious at the time he entered upon his employment. Neither the absence of the idler pulley nor the want of a belt shifter, even if assumed to be necessary to the safe operation of the plant, can be said to have been hidden defects. Everything was open and visible to any one entering the room.

In Gibson v. Erie R. Co., 63 N. Y. 449, 20 Am. Rep. 552, it was held that where defects in machinery or other appliances are as well known to a servant as to the master, the servant must be regarded as voluntarily incurring the risk resulting from its use, where the master has not, by urging on the servant, or coercing him into danger, or in some other way, directly contributed to the injury, and that where a servant accepts service, from its nature necessarily hazardous, with a knowledge of the character and position of the structures from which employes might be liable to receive injury, he cannot call upon the master to make alterations to secure greater safety, or, in case of injury, hold him liable, See, also, Plunkett v. Donovan (City Court Brook.), 12 N. Y. Supp. 455. In Odell v. N. Y. Central R. Co., 120 N. Y. 325, 23 N. E. 478, 17 Am. St. Rep. 650, it was held error to refuse an instruction to the jury that, if plaintiff had knoweldge of the defects of the machinery by which he was injured, he could not recover. Maloney v. Cunard S. S. Co., 217 N. Y. 278, 111 N. E. 835; O' Malley v. Boston Gas Light Co., 158 Mass. 135, 32 N. E. 1119, 47 L. R. A. 161; Texas & P. Ry. Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188.

[2] That appellant in this case had knowledge of the alleged defects must be conclusively presumed. With his long experience and familiarity with this class of machinery, a first glance at the equipment must have disclosed to him the absence of the idler pulley, and of any usual shifting device, and, even though he did not observe them, yet, as was held by this court in Carlson v. Sioux Falls Water Co., 5 S. D. 402, 59 N. W. 217, syllabus:

"The master is not liable for an injury to the servant in the course of his employment, when the danger is of such a character that it must be as apparent to the servant as to the master."

And in that case, upon rehearing (8 S. D. 47, 65 N. W.), this court said:

"He is bound to make use of his eyes, to see a source of danger which is open and apparent to anybody who would use his eyes."

The rule thus announced was adhered to in Schweinforth v. Schwenk-Barth Brewing Co., 36 S. D. 75, 153 N. W. 908.

Again, in Peterson v. Otho Development & Power Co., 39 S. D. 633, 166 N. W. 147, this court said:

"An employe assumed no risks from dangers resulting from his employer's negligence, except where he has notice of such risks; but he will be regarded as having assumed even such risks as result from his employer's negligence if he had, or ought to have obtained, knowledge of such risks before his injury was received. There are exceptions to this last rule, as in the case where an employe continues in an employment, though subject to extraordinary risks caused by his employer's negligence, because of a promise that the cause of such extraordinary risk will be removed. * * * The jury might have been justified in finding that there was no assumption of such extra risk as was caused by appellant's failure to provide proper fuse, if there had been any evidence upon which it could have based a finding that respondent did not comprehend or understand the risks incident to working in this particular shaft, or if there had been any evidence that, comprehending such extraordinary risk, he continued to work because of a promise that the cause of such extraordinary risk would be removed. It cannot be said that, because he concluded there was no miss-fire hole, he did not comprehend the risk. If the proper fuse had been used and a miss-fire hole had been reported, no one could claim that an employe who, after receiving such report, continued to work in the shaft, did not assume the risks incident to the possible existence of such a miss-fire hole, although, after examination, he failed to locate the hole and concluded there was none. Such a risk was one clearly assumed by an experienced miner."

In 18 R. C. L., p. 683, § 172, it is said:

"If at the time of injury he had no knowledge of the peril to which he was subjected, he is entitled, as a rule, to be compensated by the employer; he is said not to have 'assumed the risk'; but conversely, if he did have knowledge of the dangerous condition or instrumentality all right of recovery is barred; and

although there are unusual or extraordinary dangers connected with the service, due to defects in the appliances and equipments used in the operation of the business, an employe assumes the risk thereof if they are known to him or are so obvious that he is presumed to have knowledge of their existence, and he continues without objection to use such appliances and equipments. The doctrine of assumed risk applies as well to those risks which arise or become known to the servant during the service as to those in contemplation at the time of the original hiring."

Again (section 174) it is said:

"If the employer would resist a recovery he must allege and prove that knowledge did exist on the part of the employe. Where there is nothing to show that an injured employe had knowledge or means of knowing of the dangerous condition of the appliances or place of work there can be no question of assumption of risk. But of course if the evidence of the plaintiff shows that the employe at the time of receiving the injury was of full age and experience in the business, and that the peril was such as ordinarily is incident to the service—*meaning that it was obvious to the employe's understanding and experience* (italics are ours)—it will be presumed that he did in fact have knowledge thereof, and the employer need produce no proof on the issue."

Again it is said (18 R. C. L., p. 694, § 179):

"Although an employe may have had knowledge, as of a physical fact, of a defective condition of tools, appliance or place by reason of which he has sustained an injury, it by no means follows that he must have appreciated the danger to which he was exposed thereby. * * * In the usual terminology of the books, the mere fact that the employe knows of the defective condition of an instrument with which he works does not necessarily charge him with contributory negligence or the assumption of risk growing out of the defects. * * * When, however, a peril is obvious or so patent as to be readily understood by the employe by the reasonable use of his senses, having in view his age, intelligence and experience, he will not be heard to say that he did not realize or appreciate."

Appellant, however, contends that the facts in this case bring it within an exception to the general rule, and that plaintiff did not assume the risk because defendant promised to repair the

alleged defects, and that plaintiff remained in such employment and received the injuries complained of pending such promise and in reliance thereon.

In 18 R. C. L., p. 696, § 180, the rule is thus stated:

"It is a well-settled general rule that the fault or 'assumption of risk' implied from a servant's knowledge that a tool, instrument, appliance, piece of machinery or place of work is defective or dangerous, is suspended by the master's promise to repair, made in response to the servant's complaint, so that if the servant is induced by such promise to continue at work he may recover for an injury which he sustains by reason of such defect within a reasonable time after the making of the promise. In the customary terminology, the employe 'may notify the employer of the defect, and continue in the service for a reasonable time relying on the employer's promise to remedy the defect, yet if the defect is not remedied within the promised time, his further continuance in the service is at his own risk, and he is guilty of contributory negligence.' "

However, it is said that:

"The opinions very generally contain statements that the doctrine of notice and promise to repair does not extend to all sources of danger. It is said that where the peril is shown to have been so obvious, immediate, and constant that a reasonably prudent person would not have incurred it, no recovery will be allowed —an employe having no right to rely on the employer's persuasions under such circumstances. Just what is the import of this proposition is not satisfactorily explained by the courts. On its face it appears to be a denial of the doctrine of promise to repair, for in the absence of any promise the employe is entitled to recover in case the danger was not obvious. An explanation may be sought and probably exists in the fundamental principle of comparative knowledge. If the peril is as apparent to the employe as to the employer, considering the age, understanding, and experience of the former, then no promise of the employer may be relied on. And so in case of injuries resulting from simple tools it ordinarily is held that no recovery can be based on the promise of the employer to effect repairs." 18 R. C. L., p. 700, § 184.

[3-5] An attempt to analyze for classification the almost innumerable decisions dealing with the two defenses known as "assumption of risk" and "contributory negligence" is impracticable here, but even a cursory examination discloses that these defenses are universally recognized, and applied upon various lines of reasoning, to an infinite variety of facts and circumstances. In many cases "assumption of risk" is recognized as a perfect defense, where no contributory negligence is shown. In many cases contributory negligence is held to be a perfect defense in the absence of any claim of assumption of risk. In some cases the two defenses are confused and treated as practically identical. In many states is observed a tendency, by means of restricted interpretation, to recognize changes in economic conditions and development which are conceived to justify the application of the broad principle that every industry and occupation should bear the entire burden of damage or loss to individuals incident to such industry or occupation. But however desirable or necessary such changes in existing laws may be thought to be, we are of the view that they should be promulgated through appropriate legislation, rather than that the courts should undertake to change or ignore fundamental legal principles so long and so universally recognized and applied. But so long as courts are called upon to administer and interpret the law as it exists, decisions should rest upon some theory which may be understood and logically applied. It would serve no useful purpose, perhaps, to attempt to review the origin and development of these defenses further than to observe that the two rest upon conceptions which are fundamentally distinct, a fact recognized by many of the ablest courts and lawwriters of the land. It is said that:

"The conception underlying the servant's assumption of a known risk is essentially that of an implied agreement to accept the responsibility for any bodily hurt which may result from his exposure to that risk"

—and that:

"the theory upon which contributory negligence is held to preclude him from recovery is that he was guilty of imprudence in the premsies, and that this imprudence was partially or entirely the cause of his injury." (49 L. R. A., page 49.)

In other words, an employe accepting employment impliedly

agrees to "assume" those risks of which he is cognizant, and which are necessarily attendant upon the occupation in which he voluntarily engages; and, second, impliedly agrees to use reasonable care to avoid injuries to himself which may result from the ordinary hazards of such business or occupation; and, first, that the master shall be exempt from liability for injuries resulting from such assumed hazards; and, second, that the master shall be exempt from damages arising from the employe's failure to use reasonable care, by reason of which he has himself contributed to the injury. Under the former defense the employe assumes no risk arising from the negligence of the employer in failing to keep his place, tools, and appliances in as safe condition as they were when the contract of employment was entered into.

[6, 7]   Again, the employer is not exempt from liability to the employe where the employe, urged or coerced by his employer, does an act in the course of his employment which he knows to be dangerous, and which he would not have done except for the actual or implied coercion of the employer; in short, whether or not there was a voluntary or involuntary modification of the original contract of employment as to the immediate hazard involved. Again, applying the theory of contract, where the employe was induced to continue the use of defective appliances by a promise of the employer to repair defects, the question would be whether the employe, by reason of such promise, had been induced to agree to a temporary modification of the contract duty of the employer to furnish reasonably safe place and appliances for the use of the employe, for a reasonable time, within which the employer agreed to make such repairs; or, in another view, the rule whether the employer had impliedly agreed, in consideration that the employe continued to use the defective premises or appliances, that the employer would himself assume the risk of injuries to the employe arising from the use of such defective premises or appliances, pending the time within which such repairs should be made. Many decisions may be found in which the reasoning of the court is, in effect, an adoption of one or the other of these views, sometimes producing a conflict in final results, upon similar facts. The majority decisions, we think, hold in effect, that when the employe is induced to continue to use defective appliances by a promise to repair, the master will be held to have assumed re-

sponsibility for injuries, pending such repairs, while the minority decisions are to the effect that the agreement of the employe to himself assume known risks is limited to a "reasonable time" within which the master must make such repairs, and that thereafter the master's original liability attaches. In some decisions the two views are ignored or confused, sometimes with haphazard results both as to the facts and the law. But under practically all the decisions, whichever of these theories is recognized, it is held that the promise to repair must have been the efficient inducement which caused the employe to continue the use of the defective appliances.

There is a line of cases which hold that when the immediate danger is as apparent to the employe as to the employer, considering the age, understanding, and experience of the former, no promise of the employer may be relied upon—in other words, the employe conclusively "assumes such risks"—or, as said by some courts, is guilty of contributory negligence which bars recovery. R. C. L. 700, § 184, supra.

We do not find it necessary to discuss this rule in the decision of the present case. The question here is as to the burden of proof, specifically to show that the promise to repair caused or induced the plaintiff to continue the use of the alleged defective appliances.

"The general rules of evidence respecting the burden of proof and the burden of proceeding are, needless to say, the same in actions for injuries to employes as in other judicial proceedings. Fundamentally the plaintiff has cast upon him the duty of establishing every element of the case necessary to a recovery. * * * It is incumbent upon the plaintiff to negative any inference that the injury resulted from a danger for which the defendant was not responsible." 18 R. C. L. 630, § 125.

The question here is whether there is any evidence in the record to sustain this burden of proof. The only evidence in the record on that point is the testimony of Moxness. He says:

"I know Mr. Porter, the pump repair man who had charge of the pump at Bristol. Grandpre was demonstrating to Mr. Porter the disadvantage of not having the idler. Porter said the idler would be there most any time. I cannot recollect the exact words, but the substance of what Grandpre said was that it was

dangerous not to have the idler. Porter said it was ordered. He said it would be there in a day or so, most any time. We continued to work there."

[8]   The rule seems to be well settled that an employe, who with full knowledge of defects and an appreciation of the danger involved continues to use defective appliances without notice or protest to the employer, himself assumes the risk, or, as some cases say, is guilty of contributory negligence, and cannot recover. However, where the employe shows that he was induced to continue the use of such defective appliances by reason of a promise of the employer to repair, both assumption of risk and negligence on his part are rebutted, and the employer is liable. But in such case the burden of proving both the promise, and that he continued to use such defective appliances because of such promise, rests upon the employe, and such facts are not presumed in his favor.

[9]   It is conceded, in this case, that plaintiff continued to use the alleged defective appliances after he had actual knowledge of the conditions and understood and appreciated the danger, and, having such knowledge and appreciation, he voluntarily assumed the risk, unless the master is shown to have assumed the risk by a promise of repair which, in fact, induced the employe to continue the use of such defective appliances. It may be noted in this connection that, in this case, no complaint was made that the bar or rod used to shift the belt was a dangerous appliance, and no promise is claimed to have been made as to such appliance, and, while that question is discussed in the briefs, it is immaterial to the issues here. It is not necessary to show that the employe threatened to quit the employment unless the repairs were made, but there must be something in the evidence from which a jury could reasonably draw an inference that the promise to repair caused the employe to continue to use the defective appliance. This fact, if it is such, is certainly within the knowledge of plaintiff or his witnesses. In most decisions involving this question, it is affirmatively shown. But in some cases courts have held that proof of the promise, and that the employe continued to work, are alone sufficient to take the question to the jury. Such evidence, standing alone, we think, is not sufficient to sustain the burden of proof required to show that the promise to repair did

in fact cause the employe to continue to use defective appliances. This fact, vital in such cases under all the decisions, is and must be within the actual knowledge of the employe or his witnesses, and the burden and duty of proving it is upon the plaintiff. It should be remembered that in such case proof of the fact of reliance upon the promise to repair is decisive of the question of assumed risk or of contributory negligence of the employe. We are of the view that plaintiff has failed to sustain the burden of proof cast upon him, and that the trial court was not in error when it directed a verdict for defendant. The order and judgment of the trial court are therefore affirmed.

GATES, P. J., and ANDERSON, J., not sitting.

Note—Reported in 190 N. W. 323. See American Key-Numbered Digest, (1) Master and Servant, Key-No. 88(3), 26 Cyc. 970, 1921 Ann. to 26 Cyc. 970; (2) Master and Servant, Key-No. 219(10), 26 Cyc. 1213, 1214; (3) Master and Servant, Key-No. 203(1), 26 Cyc. 1177-1180; (4) Master and Servant, Key-No. 227(1), 26 Cyc. 1226, 1231, 1233; (5) Master and Servant, Key-No. 208(1), 1185, 1186, 1225; (6) Master and Servant, Key-No. 222(1), 26 Cyc. 1221-1223; (7) Master and Servant, Key-No. 221(4), 26 Cyc. 1209; (8) Master and Servant, Key-No. 265(13), 26 Cyc. 1414; (9) Master and Servant, Key-No. 288(15), 26 Cyc. 1478-1482.

On application of maxim volenti non fit injuria as a defense to actions by injured servants, see notes 47 L. R. A. 161 and 49 L. R. A. 33; foundation of doctrine, 18 R. C. L. 671.

On assumption of risk by servant who continues work on master's promise to remove specific cause of danger, or promise to repair, see note 40 L. R. A. 782; 18 R. C. L. 696.

On question as to whether servant may assume the risk of dangers created by the master's negligence, see notes in 4 L. R. A. (N. S.) 848 and 28 L. R. A. (N S.) 1215; 18 R. C. L. 677.

On dangers which might have been discovered by exercise of ordinary care on servant's part, see note 28 L. R. A. (N. S.) 1250; 18 R. C. L. 687.